**THOMAS CONLIN CO. v. GUCKIAN et al.**

No. 25113.    May 22, 1934.

Rehearing Denied June 12, 1934.

Thurman, Bowman & Thurman and T. Raymond Higgins, for petitioner.

Carmon C. Harris, for respondents.

CULLISON, V. C. J. This is an original proceeding before this court by Thomas Conlin Company, petitioner, to review an order and award of the State Industrial Commission rendered September 20, 1933, in favor of J. W. Guckian, claimant.

The employer's first notice of injury, filed August 29, 1931, stated that on July 25, 1931, James W. Guckian, while in the employment of the Thomas Conlin Company as a plumber, received an accidental personal injury when a wrench slipped while claimant was applying the same to a pipe; that claimant fell and injured his back; that they furnished claimant medical attention immediately.

On August 29, 1931, Dr. Earl D. McBride filed with the Commission the attending physician's report, describing the injury as a right lumbo sacral strain, occasioned, according to claimant's statement, when claimant fell from a ladder due to a wrench slipping. Treatments were described as "diathermy treatments and back strapped," with the duration of disability estimated at 10 days.

On June 9, 1932, claimant filed his employee's first notice of injury and claim for compensation, giving the date of the injury as of July 2, 1931, alleging a severe sprain of the right hip and back due to a wrench slipping. That claimant has been disabled since the day of the accident, having been able to do but a partial day's work since the injury, and that he claims a permanent partial loss of the use of the right leg; that his average daily wage was $10.

June 9, 1932, claimant filed his motion for hearing, which reads as follows:

"Motion for Hearing.

"Comes now the claimant and states to the Commission:

"That he received an accidental personal

injury on or about the 2nd day of July, 1931, arising out of and in the course of a hazardous employment, with the respondent, and that he received a severe strain of the right hip and back; that notice of the injury was given the respondent; that the claimant was given medical treatment and that claimant has been paid no compensation.

"Wherefore, claimant prays that this cause be placed on the Oklahoma City docket for hearing to determine liability and the extent of disability."

On June 14, 1932, respondents replied thereto as follows:

"Comes now the respondent and insurance carrier and deny that J. W. Guckian was injured in the course of his employment.

"(2) That if an accident was suffered by Mr. Guckian that he did not miss five days from his work by reason of the alleged accident and that if he was injured on July 25th of 1931, he returned to work for Thomas Conlin Company on July 29th and therefore was not entitled to any compensation benefits.

"Respondents and insurance carrier further maintain that this claimant has been working since his alleged accident of July 5, 1931, and that he is not entitled to any compensation and that his accident has not resulted in any disability."

Pursuant to the issues being thus joined, notice of hearing was given all parties by the Commission, and the first hearing had. On July 14, 1932, the Commission conducted a second hearing, at which hearing Dr. R. S. Love and Dr. Earl D. McBride testified.

July 15, 1932, the Commission made and entered its order and award, the pertinent part of which reads as follows:

"* * * It is therefore ordered: That within 15 days from the date hereof, the respondent or its insurance carrier pay to the claimant the sum of $165, or 9 weeks' and 1 day's compensation at the rate of $18 per week on account of the temporary total disability of the claimant due to said accidental injury, and the further sum of $39 or 2 weeks' and 1 day's compensation at the rate of $18 per week on account of the same being the accumulated compensation from the 1st day of July, 1932, to the 15th day of July, 1932, and that the respondent or its insurance carrier continue to pay claimant compensation at the rate of $18 per week for a period not to exceed 300 weeks, or until otherwise ordered by the Commission on account of the temporary total disability of the claimant due to said accidental injury. * * *"

July 16, 1932, respondents filed the following demurrer:

"Comes now the respondent and insurance carrier and ask this Commission to dismiss this case for the following reasons:

"(1) The evidence shows that the claimant was confined to his bed on May 30th and previous to that time for a week or ten days; that he was suffering from a hydrocele which has been present rather severely for three years and has been in existence for 30 years.

"(2) Claimant's form 3 alleges that he suffered an injury to his back and right hip and most, if not all, of the testimony was confined to the hydrocele and the respondent and insurance carrier maintains it is not a result of the alleged accident of July, 1931. No claim was filed by this claimant within one year claiming that the hydrocele was a result of his accident of July 2, 1931.

"(3) All the evidence shows that the plumbers' trade is very quiet and that there is at least 50 per cent. of the plumbers who are not working, and it is the respondent and insurance carrier's contention that this claimant has not been disabled by any physical ailment and that his inability to work has been due to the general economic conditions.

"Wherefore, considering the premises, the respondent and insurance carrier request that the case be dismissed."

On August 15, 1932, an appeal bond was posted with the Commission, and on August 23, 1932, the transcript of the record was filed in this court for review.

On May 2, 1933, this court decided the case by vacating the award of the Commission and remanding the cause, with directions for the Commission to give the matter further consideration if the claimant desires. See Conlin Co. et al. v. Guckian et al., 153 Okla. 193, 21 P. (2d) 740.

The mandate of the Supreme Court was spread of record, and the cause set for further hearing on June 1, 1933. On June 7, 1933, further testimony was adduced, at which hearing Drs. Love, Riley, and McBride testified. Hearings were had July 6 and 10, 1933, at which hearings J. C. Thompson, Drs. H. J. Bailey and J. F. Martin, and the claimant testified. Oral argument was had before the Commission on August 23, 1933, and the cause submitted.

September 20, 1933, the Commission entered its order and award, which is the subject of this proceeding to review, and which appears in words and figures (omitting caption) as follows, to wit:

"Order.

"Now, on this 20th day of September, 1933,

the State Industrial Commission being regularly in session, this cause comes on to be considered. * * *

"Having reviewed the testimony taken at said hearings, examined all records on file in said cause, and being otherwise well and sufficiently advised in the premises, the Commission finds:

"(1) That claimant herein on and prior to July 2, 1931, was in the employment of this respondent and engaged in a hazardous occupation covered by and subject to the provisions of the Workmen's Compensation Law;

"(2) Arising out of and in the course of his said employment claimant on July 2, 1931, sustained an accidental personal injury to his back and

"(3) The Commission further finds: That during the period of claimant's temporary total disability resulting from the aforesaid accidental injury, claimant performed light labor and drew wages therefor.

"(4) The Commission further finds: That since July 2, 1932, the said claimant has suffered from a permanent partial disability as a result of the aforesaid accidental injury to his back by reason of which his wage-earning capacity since July 2, 1932, has not exceeded $6 per day, or a decrease in wage-earning capacity of $4 per day, the average wage of claimant at the time of said injury having been $10 per day; and as a result of the aforementioned accidental injury and resulting permanent partial disability, claimant is entitled to sixty-six and two-thirds per cent. of the difference between his average weekly wages at the time of said injury and his wage-earning capacity after July 2, 1932, and during the continuance of such permanent partial disability, not to exceed 300 weeks.

"The Commission is of the opinion: On consideration of the foregoing facts, that claimant is entitled to further compensation at the rate of $15.39 per week computed from July 2, 1932, until further order of the Commission, not to exceed 300 weeks, for the permanent partial disability hereinbefore mentioned, and said cause is to remain subject to reconsideration of the same degree of such impairment by the Commission on its own motion, or upon application of any party in interest.

"It is therefore ordered: That within 15 days from this date respondent or insurance carrier herein pay to the claimant the sum of $979.82, or 63 weeks' and 4 days' compensation at $15.39 per week, computed from July 2, 1932, to September 20, 1933, and that the payment of said compensation be continued from September 20, 1933, at $15.39 per week until further order of the Commission, not to exceed 300 weeks, for the said permanent partial disability suffered by the claimant herein.

"It is further ordered: That within 30 days from this date respondent or insurance carrier herein file with the Commission proper receipt or other report evidencing compliance with the terms of this order.

"Upon adoption of the foregoing order, roll was called and the following voted aye:

"Chairman Thos. H. Doyle

"Commissioner Mat McElroy

"Commissioner E. H. Fannin, Absent.

"MMcE:aj"

Petitioner herein executed an appeal bond and seeks a reversal of the foregoing award on the following grounds:

First Proposition.

"The Commission's finding that, as a result of the alleged accidental injury of July 2, 1931, the claimant suffered a permanent partial disability beginning and since July 2, 1932, is not reasonably supported by any evidence and is contrary to law."

Second Proposition.

"The Commission's finding that, as a result of the alleged accidental injury of July 2, 1931, the claimant's wage-earning capacity since July 2, 1932, has decreased from $10 per day to $6 per day, and that there was an actual decrease of $4 per day, and the Commission's order requiring petitioner to pay the claimant 66⅔ per centum of the decrease, are not reasonably supported by any evidence and are contrary to law."

Dr. R. S. Love testified as follows:

"Q. (By the Court) What year, Doctor? A. 1932. The physical examination at that time shows that the hydrocele and injury of the testicle has made complete recovery. He still complains of considerable pain—this was written at this time, Judge, that the examination was made at the request of E. C. Chastain—He still complains of considerable pain in the muscles of the back and hips. The physical condition is much better than on July 8th, at the other examination and when he went to the hospital. I believe that Mr. Guckian is able to do some light work and is better physically than at the time I operated him.—Now, some time in the latter part of June, Mr. Guckian came back to my office for further examination. Q. (By the Court) In 1933? A. Yes. And at this time he complained of pain over the right hip and right sacroiliac, and the small part of the back. Also, complained of the sciatic nerve on the right side hurting him. At this time he tells me that he is not able to do any heavy work, and in fact he has not been able to do any work since he sustained the accident. Now, it is my opinion today that Mr. Guckian's hydro-

cele has completely recovered, after operating it, and that he is now suffering about 50 per cent. total permanent disability on account of the strain in his back. Q. Doctor, has the disability suffered to his back continued ever since you first saw him, after the accident and when you operated him? A. Yes, sir. Q. And on the various occasions that you have seen him since that, has he ever failed to complain of the condition of his back? A. No, he has always complained of the condition of his back. I had Mr. Guckian out at my home to try to do some work, and I could observe him, and he gave out in about an hour, and I finally had to get somebody else to do the work. He was not able to do it. Q. Taking into consideration the history received from the claimant, and taking into consideration your physical examination, what is your opinion as to the cause of his present disability? A. (Upon objection being overruled and exceptions allowed) Well, it is my opinion his back injury is due to his fall—the position he fell in. Q. Do you think at this time his condition is in any way due to the hydrocele? A. No.—I would like to show you the hydrocele, Judge, if you would look at it—I mean where it was. Would you like to look at it? By the Court: No; not now. Q. And you think he is 50 per cent. disabled, and that 50 per cent. disability is permanent? A. I do. * * *"

Re-cross-examination (By the Court):

"Q. Claimant gives a history of having pain upon using his back? A. Yes, sir. Q. It is your opinion he does have that pain that he gives a history of? A. Yes, sir; it is. Q. And he is not faking that pain? A. Oh, no, he is not faking that pain, Judge."

Dr. John W. Riley testified as follows:

"Q. When was the last time you have treated, or examined, Mr. Guckian? A. May 31, 1933. Q. Was that at the request of the respondent in this case? A. Yes, sir. * * *"

Dr. Riley gives a detailed history of his examination of claimant. Upon cross-examination, Dr. Riley testified as follows:

"Q. Doctor, the man is not suffering any from a hydrocele at this time, so far as the performance of ordinary manual labor? A. No, sir. * * * Q. Doctor, in 1930, you treated the claimant, did you? A. Yes, sir. Q. Was he working at that time? A. No. * * *"

Dr. Earl D. McBride testified:

"Q. You have previously testified in this same claim (case), have you not, Doctor? A. I believe I did;—Yes, sir,—7-14-32. Q. When did you examine him, Doctor? A. June 3, 1933. * * * Q. I will ask you as a result of your examination of June 3rd, in your opinion, is claimant disabled from doing ordinary manual labor? A. It seemed

to me he should be able to do manual labor. * * *"

Cross-examination:

"Q. When he came to you in 1931, he reported to you an injury of his back? A. Yes, sir. Q. And you gave him heat treatment to the back? A. Yes, sir. Q. And strapped it? A. Yes, sir. Q. And he is complaining of his back now? A. Yes, sir."

J. C. Thompson testified:

"Since that time (July, 1932) have you had occasion to work with Mr. Guckian, or have him work for you? A. Yes, sir. Q. When was that? A. The early part of April, this year. * * * Q. What was the nature of the work? A. I had four bathrooms to install in the Lahoma Hotel. Q. Did Mr. Guckian finish that job for you? A. No, sir. Q. How long did he work for you? A. About five days. Q. Did he terminate his employment there by reason of the building being completed, or otherwise? A. No. He was not able to work. Q. How long did the whole job last? A. About 9 days. Q. How long was he able to work? A. He was around there five days, but he didn't do much work. * * * A. He was sitting down to do some work, he should have been standing up to do. Q. Did he perform the work satisfactory? A. Well, what he did was all right. Q. Was he able to perform what work you required of him to perform? A. No. Q. And how much did he earn while he was working for you? A. Well, I hired some help and give him $18.50. Q. And you say you hired him some help? A. Yes, sir. Q. And they worked with him during the five days? A. Yes, sir. Q. Well, $18.50 for 5 days would be about $3.60 per day—that is what you paid him, is it? A. Yes, sir. Q. And if he had been able to perform the labor he should have performed satisfactorily would—is there any other reason he would not have remained on the job until its termination? A. No, sir."

Dr. H. J. Daily testifies:

"Q. How many years have you been practicing, Doctor? A. Thirty. * * * Q. Have you had occasion to examine J. W. Guckian, the claimant in this case? A. Yes. * * * Q. When was the last examination? A. In April. I have not the date. * * * Q. Doctor, I wish you would make your own report? * * * A. * * * Conclusion: This man had a sacroiliac sprain which left a partial permanent disability of 40 to 50 per cent. Also had a hydrocele due to traumatism, but operation relieved this entirely. Q. That is your report after examining the man? A. Yes, sir. Q. On your last examination in April, was he suffering any at all from this hydrocele? A. * * *. Q. It has entirely disappeared? A. Yes, sir. * * * Q. And you state in your report you find an injury there from an injury to the back—what do you call it? A. Sacroiliac sprain. Q. In your

opinion, does that disability—is that a condition that disables him from performing ordinary manual labor at this time? A. **Yes,** sir. Q. What is your opinion as to whether or not that condition is permanent or not? A. After such a long duration I think it is permanent. * * *"

Cross-examination:

"Q. * * * Now, Doctor, from your testimony, is it your opinion that claimant is now not suffering any disability as a result of the hydrocele? A. No, I don't think he is. Q. The disability he now has is to his back? A. Yes, sir. Q. Now, Doctor, from the history given you by the claimant, and from your examination of the claimant, is it your opinion that the disability of the claimant which he now has is the result of the accidental injury he give you a history of? A. Yes, sir."

Dr. J. F. Martin testified as follows:

"Q. Did you make an examination of the claimant, Doctor, as to the disability as a result of the hydrocele? A. I examined the scrotal region, and hernia, and inguinal canal and found the canal obliterated on the right side, and there was no evidence of a hydrocele present. Q. Was there any disability as a result of the hydrocele? A. No disability as a result of the hydrocele present. * * *"

Claimant testified, on cross-examination, as follows:

"Q. Mr. Guckian, have you done anything since you received the injury, July 2, 1931—performed any common, ordinary manual labor, such as going out and working in the ditch, or work that you would designate as common, ordinary labor? A. Yes; I did on the Ramsey Tower Building. I drew money the same as other plumbers. I can't tell you just how long I worked there. Off and on until the building was completed. Q. Did you do any of that—perform any work without suffering from pain and discomfort? A. I have not. I positively have not, Judge. Q. Now, you have been questioned as to the work you have recently done. Was you compelled to quit some of those jobs because of not being able to continue on? A. I have had to quit every job that I started. Yes. Because I would give out. Q. Now, what wages did Mr. Thompson give you for the work you performed? A. He was to give me $80 if I could do the work. I had to get another plumber—some help. and I got $18.50. and give him the rest. Q. What did that average you per day? A. Oh, about $3 or $3.50 is all I could get out of it. * * *"

The Commission made findings of facts and rendered the order and award heretofore set out.

The evidence clearly shows that the claimant sustained an accidental back injury on the 2nd day of July, 1931, which resulted in a decrease in his wage-earning capacity.

The record also shows that claimant suffered a decrease in earning capacity from 40 per cent. to 50 per cent., due to the accident. Two physicians testify to that effect. The claimant also testifies at length as to the amount of time he was able to work and did work during the last year, and is fully corroborated by fellow workmen.

The award of the Commission is affirmed.

RILEY, C. J., and SWINDALL, ANDREWS, and OSBORN, JJ., concur. BUSBY, J., absent.